IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID OSTRINSKY, As Administrator of the Estate of Michael Ostrinsky, deceased, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) No. 15 C 1545 |
| BLACK & DECKER (U.S.) INC., et al., | ) |
| Defendants. | ) |

MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Black & Decker (U.S.) Inc's (B&D) motion to bar Plaintiff's expert witness. For the reasons state below, the motion is granted in part and denied in part.

BACKGROUND

On February 19, 2013, Michael Ostrinksy (Ostrinksy) was allegedly present in his residence (Residence) in Wauconda, Illinois, when a toaster made by B&D failed to pop up bagel slices and started a fire. As a result of the fire, Ostrinksy allegedly died from smoke inhalation and carbon monoxide poisoning. Plaintiff, acting as the Administrator of Ostrinksy's Estate, brought the instant action in state

1

court and included in his complaint a wrongful death strict product liability claim (Count I), a Survival Action strict product liability claim (Count II), a wrongful death negligence claim (Count III), and a Survival Action negligence claim (Count IV). Defendants removed the instant action to federal court and now seek to bar certain testimony by Plaintiff's expert witness.

## DISCUSSION

B&D seeks to bar certain opinions of Dr. Mary E. Case MD (Case), who is Plaintiff's proposed expert witness. The district court acts as a gatekeeper in determining whether to allow an expert to testify at trial. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834-35 (7th Cir. 2015)(stating that "the key to the gate is not the ultimate correctness of the expert's conclusions," but "[i]nstead, it is the soundness and care with which the expert arrived at her opinion")(internal quotations omitted)(quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). Federal Rule of Evidence 702 (Rule 702) and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993) "govern the admission of expert testimony in federal courts, even when . . . jurisdiction rests on diversity." *Id.* Rule 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the

principles and methods to the facts of the case.

Fed. R. Evid. 702. *Daubert* indicates that in assessing the reliability of an expert opinion, a court may consider factors such as: "(1) whether the scientific theory has been or can be tested; (2) whether the theory has been subjected to peer-review and/or academic publication; (3) whether the theory has a known rate of error; and (4) whether the theory is generally accepted in the relevant scientific community." *Textron, Inc.*, 807 F.3d at 834-35 (stating that "[u]ltimately, reliability is determined on a case-by-case basis").

In the instant action, in Count VIII Plaintiff is seeking damages for pain and suffering that Ostrinksy allegedly experienced during the fire before he died. Under Illinois law, "consciousness is a requisite element of a complaint seeking recovery for pain and suffering," and "in presenting such a claim, the evidence involved must do more than provide mere speculation that the decedent was conscious and suffered pain." *Ellig v. Delnor Cmty. Hosp.*, 603 N.E.2d 1203, 1207 (Ill. App. Ct. 1992). In order to assist the jury in concluding that Ostrinksy was conscious and experienced pain and suffering, Plaintiff hired Case to provide expert opinions. B&D seeks to bar Case's opinion that Ostrinksy suffered a carbon-monoxide-related headache for some indeterminate amount of time before losing consciousness, and to bar Case's opinion that Ostrinksy may have experienced discomfort breathing soot before losing consciousness. Plaintiff concedes that Case should not be allowed to opine that Ostrinksy may have experienced discomfort breathing soot before losing consciousness. (Resp. 7). Therefore, the motion to bar such testimony relating to a

3

discomfort in breathing is granted.

In regard to Case's opinions as to pain and suffering from certain symptoms, B&D does not dispute that Case is qualified to make such an opinion. B&D argues only that Case's opinion regarding such pain and suffering is not reliable and will not assist the trier of fact. Although B&D moves to bar the totality of Case's opinion regarding Ostrinksy's consciousness and his experiencing pain and suffering, as explained below, her opinion does not necessarily need to be admitted or barred in its entirety on that issue.

I.  Amount of Time that Ostrinksy Experienced Pain and Suffering

B&D argues that Case has not offered a reliable opinion regarding the amount of time that Ostrinksy was conscious and experienced pain and suffering. Case opined that Ostrinksy would have been conscious while experiencing pain and suffering for "10 minutes or more. . . ." (Case Rep. 4). B&D has presented evidence showing that a key factor in determining the rate at which an individual's carboxyhemoglobin level increases is the atmospheric concentration of carbon monoxide. Although Case in estimating the time of pain and suffering makes a conclusory reference to the "atmosphere . . . . [in] this case," the record does not indicate that Case has sufficient information as to what the atmosphere was in this case. (Case Rep. 4). Case admitted during her deposition that an individual who is in an area with a higher concentration of carbon monoxide in the atmosphere will reach a lethal level faster than an individual who is in an area with a lower

4

concentration in the atmosphere. (C Dep. 67). Yet Plaintiff does not dispute that Case did not conduct any sort of test at the Residence as to the atmospheric concentration of carbon monoxide during the fire. Case acknowledged at her deposition that the atmospheric level in Ostrinksy's residence was not measured. (C Dep. 68). Case also admitted that she did not review any of the tables that correlate the time of absorption versus atmospheric content. (C Dep. 69). Case indicated that she has observed videos of people who have committed suicide using a hose or in a garage. (C Dep. 77). However, Case has not shown that the suicide scenarios where carbon monoxide was purposefully being directed into an area would have atmospheric conditions comparable to that in a residential fire. Case was asked at her deposition if she had any opinion as to what the carbon monoxide atmospheric level was in the Residence, and Case responded: "I do not." (C Dep. 69). Case was further asked if she could at least provide a range of the level of carbon monoxide in the atmosphere in the Residence, and Case responded: "No, I cannot." (C Dep. 69). Case thus has acknowledged her lack of knowledge as to a key variable that would be necessary for any calculation or even reasonable estimation of the rate at which Ostrinksy's carboxyhemoglobin level increased. That in turn means that Case can do nothing more than speculate as to the amount of time that passed between the point that Ostrinksy began to experience pain and suffering and the point he lost consciousness. Case has not shown that her opinion in this regard is reliable or that it will assist the trier of fact. Therefore, Case will be barred from presenting any opinion as to how long Ostrinksy experienced pain and suffering.

II. Loss of Consciousness

Although Case cannot opine as to the amount of time that Ostrinksy was conscious, that does not mean that Case's opinion regarding the phases that a person's body will ordinarily go through when inhaling carbon monoxide would be inadmissible. As indicated above, in order to obtain damages for pain and suffering, Plaintiff will need to establish that Ostrinksy was conscious. *Ellig*, 603 N.E.2d at 1207. Case has listed various pieces of evidence and literature that she has relied upon in estimating the stages that Ostrinksy would have gone through before losing consciousness. Case opined that Ostrinksy would not have immediately lost consciousness when inhaling the carbon monoxide. (Case Rep. 4); (Reply 7). Such an opinion by Case would assist the trier of fact. B&D argues that no one has any way of knowing for sure whether Ostrinksy was conscious when the fire started or if he immediately lost consciousness when the fire started. (Reply 7). Plaintiff, however, does not have to provide definitive evidence on such points. Plaintiff may use expert testimony such as through Case to provide an opinion on the issue of consciousness.

Case opines that Ostrinksy would have lost consciousness at "between 30 and 40 [percent], approaching 50 percent." (C Dep. 77). Such an opinion would assist the trier of fact in at least understanding that at a certain level Ostrinksy would have lost consciousness. Plaintiff has shown that such opinions are relevant and reliable. Case explains that she formed her opinion based upon her training and experience and the sources for her opinions, including her study of car suicide victims. Case

6

thus can offer her opinion that Ostrinksy would have remained conscious after he began inhaling carbon monoxide and that he would have lost consciousness at a certain carboxyhemoglobin level.

III. Pain and Suffering

Case's opinion also is relevant to show that Ostrinksy would have suffered pain and suffering while conscious. Case estimates that Ostrinksy would have begun experiencing symptoms such as a throbbing headache when his carboxyhemoglobin level reached 20%. (Case Rep. 4). Such an opinion would also assist the trier of fact by providing information regarding how a body reacts to carbon monoxide inhalation symptoms before becoming unconscious. In addition, the estimates by Case as to the carboxyhemoglobin level at which Ostrinksy would have begun experiencing the symptoms will assist the trier of fact. Plaintiff explains that it is difficult to conduct scientific tests as to the phases a body goes through when a person dies from carbon monoxide inhalation because of the nature of the event. Case explains that she has researched videos of suicides and other materials in forming her estimates. (C Dep. 77). Plaintiff has shown that her opinion in this regard is sufficiently reliable. B&D takes issue with the ranges provided by Case and criticizes Case for not being able to specifically identify what symptoms Ostrinksy actually suffered, and for not considering certain issues. However, as explained above, this initial gatekeeping stage is not the proper moment to directly contest the opinion of an opponent's expert. *Textron, Inc.*, 807 F.3d at 834-35. B&D will have an opportunity at trial to

7

try and show that Case's opinion is not correct and argue that it should not be accepted by the trier of fact. Therefore, Case will be allowed to offer an opinion that Ostrinksy would have suffered certain painful symptoms and that at a certain carboxyhemoglobin level Ostrinksy would have begun experiencing such pain and suffering.

B&D is correct that Case does not provide any definitive evidence as to exactly what transpired during the fire, and that no one knows for certain whether Ostrinksy felt a headache for a single breath before losing consciousness, or felt the symptoms for several minutes. (Mem. 12). However, procuring the opinion of an expert on such an issue is a proper step that may be taken by a plaintiff in civil litigation. Case provides certain opinions that are reliable and are relevant in this case. Ultimately it is the trier of fact that will make that definitive determination as to whether Ostrinksy was conscious during the fire and whether he experienced pain and suffering after hearing the evidence and opinions presented by both sides. Plaintiff has shown that, aside from estimating the amount of time that the pain and suffering occurred, Case's opinions are sufficiently reliable and relevant, and would assist the trier of fact in this case. Plaintiff should be entitled to present his expert witness on these points. B&D in turn will have the opportunity to cross-examine Case at trial and to present its own expert witness to try and show the trier of fact that Case's opinions should not be followed by the trier of fact.

# CONCLUSION

Based on the foregoing analysis, B&D's motion to bar is granted in part and denied in part. Case will be barred from presenting any opinion that Ostrinksy may have experienced discomfort breathing soot before losing consciousness, or any opinion as to how long Ostrinksy experienced pain and suffering. Case can offer her opinion that Ostrinksy would have remained conscious after he began inhaling carbon monoxide and that he would have lost consciousness at a certain carboxyhemoglobin level. Case may also offer her opinion that Ostrinksy would have suffered certain painful symptoms and that at a certain carboxyhemoglobin level Ostrinksy would have begun experiencing such pain and suffering.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 14, 2016