IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID OSTRINSKY, As Administrator )
of the Estate of Michael Ostrinsky, )
deceased, )
 )
 Plaintiff, )
 )
v. ) No. 15 C 1545
 )
BLACK & DECKER (U.S.) INC., et al., )
 )
 Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Black & Decker (U.S.) Inc.'s (B&D) motion to bar Plaintiff's expert witness. For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

On February 19, 2013, Michael Ostrinksy (Ostrinksy) was allegedly present in his residence (Residence) in Lake Barrington, Illinois, when a toaster (Toaster) made by B&D allegedly failed to pop up bagel slices and started a fire (Fire). As a result of the Fire, Ostrinksy allegedly died from smoke inhalation and carbon monoxide poisoning. Plaintiff, acting as the Administrator of Ostrinksy's Estate, brought the

1

instant action in state court and included in his amended complaint wrongful death negligence and strict product liability claims, and Survival Action negligence and strict product liability claims. On September 29, 2015, Plaintiff voluntarily dismissed all claims except the wrongful death negligence claim and the Survival Action negligence claim brought against B&D. B&D now seeks to bar certain testimony by Plaintiff's expert witness, Darl Ebersole (Ebersole).

## DISCUSSION

The district court acts as a gatekeeper in determining whether to allow an expert to testify at trial. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834-35 (7th Cir. 2015)(stating that "the key to the gate is not the ultimate correctness of the expert's conclusions," but "[i]nstead, it is the soundness and care with which the expert arrived at her opinion")(internal quotations omitted)(quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). Federal Rule of Evidence 702 (Rule 702) and *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993) "govern the admission of expert testimony in federal courts, even when . . . jurisdiction rests on diversity." *Id.* Rule 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

2

Fed. R. Evid. 702. *Daubert* indicates that in assessing the reliability of an expert opinion, a court may consider factors such as: "(1) whether the scientific theory has been or can be tested; (2) whether the theory has been subjected to peer-review and/or academic publication; (3) whether the theory has a known rate of error; and (4) whether the theory is generally accepted in the relevant scientific community." *Textron, Inc.*, 807 F.3d at 834-35 (stating that "[u]ltimately, reliability is determined on a case-by-case basis"). B&D contends that Ebersole lacks the qualifications to offer certain opinions and that certain opinions by Ebersole are not reliable.

I. Qualifications to Render Opinions

B&D argues that Ebersole is not qualified to render the following opinions that he has propounded in this case: (1) that B&D failed to follow a reasonable standard of care in the design of the Toaster and that such failure caused Ostrinsky's death, (2) that it was unreasonable for B&D to design a toaster that would indefinitely heat food products to the point of combustion as a result of foreseeable failures and blockages within the Toaster, (3) that providing a design that would have prevented the Fire would not have imposed a significant cost to the manufacturer and would not have defeated the utility of the Toaster, and (4) that the owner's manual for the Toaster failed to adequately warn the user that the Toaster could fail.

Although the court will not detail all of the education, training, and

3

experience listed in Ebersole's resume, the court will touch on a few of the pertinent points listed. The record indicates that Ebersole is a licensed Professional Engineer and Certified Fire and Explosion Investigator. Ebersole holds a Bachelor's of Science in Electrical Engineering. Ebersole is a member of certain professional panels and societies and was an instructor at a career and technology center teaching electrical safety. Ebersole has worked as an electrical engineer, a firefighter, and fire investigator, and has investigated more than 400 fires as a primary fire investigator.

### A. Cause of Fire

B&D contends that Ebersole lacks the qualifications to opine that a negligent design in the Toaster caused the Fire. B&D argues that Ebersole lacks training regarding toaster design and lacks knowledge of the toaster industry. However, Plaintiff is correct that an expert is not required to have such a narrow focus in training that dealt specifically with the type of product at issue. Ebersole does not necessarily need to be an expert on toasters in order to render an opinion in this case. B&D also contends that Ebersole is not qualified because he lacks training and experience in the area of the design of household products. There is, however, no justification for an arbitrary distinction. If, for example, Ebersole had worked in vacuum cleaner design, that would not necessarily have made him any more qualified to expound on toasters than someone who worked on designs of other

4

products that are not household products. The Seventh Circuit has indicated that a general education may not be sufficient to render a witness an expert for all purposes, stating, for example, that "simply because a doctor has a medical degree does not make him qualified to opine on all medical subjects." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). While a general degree in electrical engineering might not suffice to render an expert opinion on the design of a product such as a toaster and a fire, Ebersole has more than such a general education. Ebersole's training in electrical engineering and electrical safety, and his experience with fire investigations are sufficient to qualify him to opine whether a negligent design in the Toaster caused the Fire. During cross-examination, B&D will have an opportunity to raise what it deems to be the deficiencies in Ebersole's qualifications, in order to argue that his opinions should be given less weight.

The court notes that Ebersole's opinions regarding the cause of the Fire do mention the cause of the "fatality." (Eb Rept. 73). The cause of Ostrinksy's death is a disputed matter in this case, and Ebersole is not a medical expert and cannot expound on the cause of death in this case.


B. Indefinitely Heating of Food

B&D contends that Ebersole lacks the qualifications to opine that is was unreasonable for B&D to design a toaster that would indefinitely heat food products to the point of combustion as a result of foreseeable failures and blockages within

the Toaster. Again, Ebersole's experience and training relating to electrical engineering, electrical safety, and fire investigation are sufficient to qualify him to render such an opinion in this case. To the extent that B&D criticizes Ebersole for his lack of involvement in toaster design or knowledge of the toaster industry in 1994, those are matters that B&D can raise on cross examination. They are not such that they would disqualify Ebersole from rendering an opinion.

### C. Alternative Design

B&D contends that Ebersole lacks the qualifications to opine that providing a design that would have prevented the Fire would not have imposed a significant cost to the manufacturer and would not have defeated the utility of the Toaster. This aspect of Ebersole's expert opinion differs from the above-referenced opinions regarding the design of the Toaster in that it is connected to a proposed alternative design as opposed to analyzing the safety of the existing design. Without sufficient knowledge of the toaster industry in 1994, or knowledge of toaster design, Ebersole lacks the qualification to opine on an alternative design. He also lacks the qualification to opine as to the cost that would have been imposed on manufacturers or the marketability of an alternative design. Therefore, Ebersole is not qualified to opine as to his proposed alternative design.

### D. Alternative Warning

B&D contends that Ebersole lacks the qualifications to opine in regard to an alternative warning that should have been included in the owner's manual of the toaster. This topic delves far beyond Ebersole's training and education regarding electrical safety and fire investigation. Ebersole has not pointed to sufficient prior training or education that would qualify him to render an opinion as to what language would have been necessary in order to effectively communicate to consumers risks associated with the Toaster in 1994. In regard to Ebersole's criticism of the language in the owner's manual of the Toaster, Ebersole offers nothing more than the perspective of a non-expert layperson. Therefore, Ebersole is not qualified to opine as to an alternative warning in the owner's manual of the Toaster.

## II. Reliability of Opinions

B&D argues that the following opinions by Ebersole are not reliable: (1) that the negligent design of the Toaster caused the Fire, (2) that alternative designs proposed by Ebersole should have been incorporated into the Toaster, and (3) that an alternative warning should have been included in the owner's manual for the Toaster.

### A. Negligent Design

B&D argues that Ebersole's opinion that a negligent design in the Toaster

caused the Fire is not reliable. B&D criticizes Ebersole for working backwards from the Fire to find negligence on B&D's part and for not conducting his testing on the same model as the Toaster, or on a toaster model in existence in 1994. B&D also criticizes Ebersole's method of restricting the carriage with a rubber band during testing, and for conducting his test in a set up that was comparable to the kitchen in the Residence. B&D further criticizes Ebersole for using a wheat bagel in his testing instead of an onion bagel that was believed to have been involved in the Fire. B&D also points out that when its expert tested the Toaster under Ebersole's theory, no fire was started. (Mot. 13, n.4). Such criticisms of Ebersole's testing by B&D can be pointed out by B&D during cross-examination. B&D's arguments go to the weight that should be accorded to Ebersole's opinion. Plaintiff is entitled to present his expert as is B&D in this case. B&D has not shown that Ebersole's opinion in regard to the cause of the Fire is such that it should be excluded as unreliable.

### B. Alternative Design

B&D argues that Ebersole's opinion in regard to an alternative design is not reliable. As indicated above, Ebersole is not qualified to render such an opinion. In addition, Ebersole has offered little more than vague speculation as to the viability of his proposed alternative design. He has not provided any specific written designs or prototypes. Nor has he provided evidence of the testing of any such designs. The court also notes that although Plaintiff contends that Ebersole's alternative designs

were the required standard in Canada and were subjected to peer review in Canada, B&D has asserted that such statements are blatantly false and has challenged Plaintiff to present evidence to support such statements. Plaintiff has not come forth with such proof. Therefore, Ebersole's opinion regarding the alternative design is not sufficiently reliable.

### C. Alternative Warning

B&D argues that Ebersole's opinion in regard to an alternative warning is not reliable. As indicated above, Ebersole is not qualified to render such an opinion. In addition, Ebersole has not offered any evidence showing that he has conducted testing of any proposed warning or even propounded the exact language of a proposed alternative warning. Nor has Ebersole shown that he has conducted sufficient testing or investigation into an alternative warning to render his opinion in this regard reliable. Ebersole cannot simply speculate in the abstract that an alternative warning should have been included in the owner's manual of the Toaster. Therefore, Ebersole's opinion regarding the alternative warning is not sufficiently reliable.

## CONCLUSION

Based on the foregoing analysis, B&D's motion to bar is granted in part and denied in part. Ebersole can opine that a negligent design in the Toaster caused the Fire, and that it was unreasonable for B&D to design a toaster that would indefinitely heat food products to the point of combustion as a result of foreseeable failures and blockages within the Toaster. Ebersole cannot opine as to an alternative design or an alternative warning.

                                                          _____
                                                          Samuel Der-Yeghiayan
                                                          United States District Court Judge

Dated: November 16, 2016