IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID OSTRINSKY, as Administrator of the Estate of MICHAEL OSTRINSKY, deceased,<br><br>    Plaintiff,<br><br>    v.<br><br>STANLEY BLACK & DECKER, INC., a Foreign Corporation, BLACK & DECKER (U.S.) INC., a Foreign Corporation, APPLICA CONSUMER PRODUCTS, INC., a Foreign Corporation, and SPECTRUM BRANDS, INC., a Foreign Corporation,<br><br>    Defendants. | No. 15-CV-1545<br><br>Judge Samuel Der-Yeghiayan<br><br>Magistrate Judge Geraldine Soat Brown |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

    NOW COMES the Plaintiff, DAVID OSTRINSKY, as Administrator of the Estate of MICHAEL OSTRINSKY, deceased, by and through LAW OFFICES OF MATHYS & SCHNEID, attorneys, and for his response to Defendant's Motion for Summary Judgment, states as follows:

**INTRODUCTION**

    This is a negligent design/negligent testing product liability case involving a defectively designed toaster that started a fire and killed Michael Ostrinsky on February 19, 2013. This is not a strict liability in tort case. This Court previously held that Plaintiff's engineering expert, Daryl L. Ebersole, P.E., CFEI, may testify at trial concerning his opinions that (1) "a negligent design in the Toaster caused the Fire" and (2) "that it was unreasonable for B&D to design a toaster that would indefinitely heat food products to the point of combustion as a result of foreseeable failures and blockages within the Toaster." *Memorandum and Opinion*, November 16, 2016, Document #56, pg. 10. Defendant wrongfully asserts that it is entitled to Summary Judgment because there is no evidence of a feasible alternative design to the T223 toaster at issue. However, there are two (2)

1

very clear questions of fact concerning feasible alternative design that should prevent this Court from granting Summary Judgment here.

## UNCONTESTED FACTS

The Black & Decker T223 toaster at issue was manufactured in February 1994. (D's SOF ¶17). On March 5, 1993, United States Patent number 5,304,782 titled "PROTECTION CIRCUIT FOR ELECTRIC TOASTER," was filed with the United States Patent and Trademark Office. *See Black & Decker Patent 5,304,782,* Exhibit 1, attached. (P's SOF ¶26). The Patent was previously filed in Australia on March 6, 1992 and the Patent assignee is shown as "Black & Decker, Inc." (P's SOF ¶27). The Patent was issued by the United States Patent & Trademark Office on April 19, 1994. (P's SOF ¶28).

The Black & Decker, Inc. Patent Number 5,304,782 "Abstract" states that the invention concerns "***An electric toaster that enables power to be disconnected from the heating elements upon completion of a toasting cycle regardless of the position of the main product supporting the carriage in the toasting compartment***." (P's SOF ¶29)(emphasis added).

The Black & Decker, Inc. Patent Number 5,304,782 "Background of the Invention" states: "Commonly in toasters the main carriage for supporting a bread slice (or the like) is capable of being moved downward to a toasting position against a main carriage spring force. … Normally, the movement towards the toasting position of the main carriage causes main electrical contacts (normally open) to be closed to supply power to the toasting elements. Release of the latching means and normal upward movement of the carriage as a result of the main carriage spring breaks these contacts to discontinue power to the toasting elements…. ***Unfortunately, occasions do arise where the main carriage might remain jammed*** or held (intentionally or otherwise) in its lowered position where the main power contacts remain closed ***resulting in the toasting elements staying in an electrically "live" condition even though a toasting cycle has been completed.*** Such jamming

2

may occur as a result of a bread slice (or similar item) of irregular shape becoming wedged in a position inside the toasting compartment so that the main carriage will not move upward even though the electromagnetic force holding the carriage down has been removed.  In other circumstances, the carriage itself may become jammed in its lowered position due to a mechanical fault or the like or a person might attempt to override the normal controls by simply physically holding the carriage down. ***Such circumstances can cause many different forms of accidents such as fires as a result of the toasting elements continuing to operate… A further preferred objective of the present invention is to provide a means for preventing continued power supply to the toasting elements upon completion of a toasting cycle regardless of the position of the main carriage.***"  (P's SOF ¶30)(emphasis added).

The Black & Decker, Inc. Patent Number 5,304,782 "Summary of the Invention" states:  "In this manner, power supply is prevented to the heating element means upon completion of the toasting cycle regardless of the position of the product supporting carriage.  Thus the product supporting carriage can be held down jammed by the product being toasted, by other mechanical failure, by intervention by a person or any other extraordinary situation but ***the power supply to the heating element means is immediately discontinued to thereby minimize the risks of fires or electrical accidents*** as discussed above."  (P's SOF ¶31)(emphasis added).

The Black & Decker, Inc. Patent Number 5,304,782 "Summary of the Invention" further states:  "Moreover, with the arrangement as discussed above, ***it is also possible to include sensing means to sense at least one abnormal condition in the toaster*** and to deactivate the electromagnetic holding device of said latching means immediately upon said abnormal condition being sensed.  ***The abnormal condition might be, for example, an over temperature condition, a flame condition***…"  (P's SOF ¶32)(emphasis added).

3

**ARGUMENT**

Black & Decker has been caught hiding relevant evidence of its own feasible alternative design as shown in Patent number 5,304,782. The Patent pre-dates the toaster at issue and it is 100% relevant to the issues in this case because it contains the *exact* toaster design that Plaintiff and his expert proposed in discovery. The Patent also directly contradicts Black & Decker's arguments in its Motion for Summary Judgment. Black & Decker should have disclosed the Patent at least four (4) different times throughout discovery, and its failure to disclose the Patent caused near fatal prejudice to the Plaintiff, wasted substantial money and attorney time, and most importantly, wasted this Court's time with a *Daubert* motion and now this motion for summary judgment. Its conduct was unfair, in violation of the Federal Rules of Civil Procedure, and simply reprehensible. This Court ought to step in and impose strong sanctions against Black & Decker and allow equitable relief to the Plaintiff, as requested below. Plaintiff requests a hearing on these unusual issues.

Where Plaintiff has expert testimony that a negligent design in the toaster caused the fire and that is was unreasonable for Black & Decker to design a toaster that would indefinitely heat food products to the point of combustion as a result of foreseeable failures and blockages within the toaster, and where there are questions of fact concerning whether Black & Decker's Patent number 5,304,782, along with the safety features it used in its other toasters, were feasible alternative designs, this is not a proper case for summary judgment. Defendant's argument that there was no feasible alternative design is simply FALSE (and entirely misleading to this Court) as is clearly shown by its own Patent.

A manufacturer has a nondelegable duty to design a reasonably safe product. *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1154 (2011). The key question in a negligent-design case is whether the manufacturer exercised reasonable care in designing the product. *Id.* "In determining whether the manufacturer's conduct was reasonable, the question is 'whether in the exercise of

4

ordinary care the manufacturer should have foreseen that the design would be hazardous to someone.' " *Id.* at 271 249 (quoting American Law of Products Liability 3d § 28:48, at 28–66 (1997)). To show that the harm was foreseeable, the plaintiff must show that "the manufacturer knew or should have known of the risk posed by the product design at the time of manufacture" of the product. *Id.*; *Sobczak v. General Motors Corp.*, 871 N.E.2d 82 (2007).

Here, Black & Decker, by its Patent, knew of the risk of fire with this toaster design, had the technology to design a toaster that would remove that risk, but simply chose to not use that technology in the design of the T223.

I. **Question of Fact Concerning Feasible Alternative Design.**

First, Patent number 5,304,782 creates a question of fact as to whether there was a feasible alternative design. The Patent is evidence the Plaintiff can use in his case in chief while cross-examining Defendant's Rule 30(b)(6) and Rule 26(a)(2) witnesses concerning the feasible alternative design shown in the Patent. Plaintiff should also be allowed to present opinion testimony from Daryl L. Ebersole, P.E., CFEI, concerning the engineering technology contained in the Patent since that will assist the trier of fact in understanding the engineering technology in the Patent. Second, there is evidence that Black & Decker used thermal cut-off (CTO) circuits in its other toasters during the same time period, and that evidence creates a question of fact for the jury to decide as to whether or not CTOs were a feasible alternative design safety feature that could have been used in the T223 toaster at issue.

A. **Black & Decker Patent Number 5,304,782 "PROTECTION CIRCUIT FOR ELECTRIC TOASTER."**

There is no doubt that Patent 5,304,782 is directly relevant to this case. Even non-engineers can see that the risk of fire issue and the technology described in the Patent is shockingly on-point to the facts of this case, and this Court must consider the substance of the Patent here. The Patent was never disclosed by Black & Decker throughout discovery. Plaintiff discovered the Patent

5

totally by chance through a complex Google search during the briefing of this motion.

### 1. Defendant's Non-Disclosure of Patent Number 5,304,782

By not disclosing the Patent throughout discovery, Black & Decker was in blatant non-compliance with the Federal Rules of Civil Procedure.

#### a. Defendant's Rule 26(a)(1) Disclosure

Rule 26(a)(1)(A)(ii) concerning Initial Disclosures required Black & Decker to disclose all documents in its possession, custody, or control that it may use to support its claims or defenses. Black & Decker disclosed various standards, development, testing and quality control documents, and specifications of the T223 toaster, but it did not disclose Patent number 5,304,782. The Initial Disclosure was signed by an attorney for Defendant but not a corporate representative of Black & Decker. *See Defendant's Rule 26(a)(1) Disclosures, Exhibit 2*.

#### b. Defendant's Answer to Interrogatory 25

Black & Decker was required to disclose Patent number 5,304,782 in response to Plaintiff's interrogatory number 25, which asked:

> 25. Did this Defendant ever consider any safer alternative design to the heating element used in the T223 Type 1 toaster? If so, state:
>
> a. The name or designation of the alternative design;
> b. The identity of personnel who had design responsibilities for the alternative design;
> c. The substantive differences between the alternative design and the actual design;
> d. The reason(s) the alternative design was not incorporated into the T223 Type 1 toaster.

Instead of disclosing the Patent as an alternative design that was considered, Black & Decker hid the Patent and answered:

> ***Black & Decker (U.S.) Inc. objects to this Interrogatory as it is argumentative and improperly assumes the existence of a defect and a safer alternative design. Answering over objection and without waiving it, Black & Decker (U.S.) Inc. designed and tested a safe product to meet and exceed applicable laws, regulations, industry standards, and customs.***

Black & Decker's Answers to Interrogatories were verified by Black & Decker corporate representative (and Rule 26(a)(2) expert) David Sitter. *See Defendant's Answers to Interrogatories, Exhibit 3*.

      c.  Defendant's Response to Request to Produce 32

Black & Decker was also required to disclose Patent number 5,304,782 in response to Plaintiff's request to produce number 32, which requested:

> **32. Produce all documents which the Defendant contends would support any potential defense claim that a safer alternative design for the T223 Type 1 toaster was not technologically or economically feasible.**

Instead of disclosing the Patent as a potential alternative design, Black & Decker hid the Patent again and responded:

> ***Black & Decker (U.S.) Inc. objects to this Request as it is argumentative and improperly assumes the existence of a defect and a safer alternative design. Answering over objection and without waiving it, see B&D 000148-53, and 155-280, previously produced.***

Documents B&D 000148-153 are product specifications; B&D 000155-158 is the final product audit plan; B&D 000159-000164 is the toaster inspection plan, and; B&D 000165-280 is the Underwriter Laboratories report from October 29, 1985. Nowhere did Black & Decker ever disclose Patent number 5,304,782. Black & Decker's Response to Request to Produce was verified by Black & Decker corporate representative (and Rule 26(a)(2) expert) David Sitter. *See Defendant's Response to Request to Produce, Exhibit 4*.

      d.  Defendant's Rule 30(b)(6) Deposition Testimony.

On January 8, 2016, Plaintiff took the discovery deposition of Black & Decker corporate designee, David J. Sitter[1], pursuant to Rule 30(b)(6). Prior to the deposition, Black & Decker was

---

[1] David J. Sitter of Black & Decker is the problem here, as the pattern of conduct shows. David J. Sitter had the requisite knowledge and multiple opportunities to disclose Patent number 5,304,782 but repeatedly chose to bury it and keep it hidden. There is probably zero chance that David Sitter did not know about the Patent during his deposition in

7

given a list of topics to prepare for pursuant to Rule 30(b)(6), which included topic 12: *"**Any commercially available safer alternative design(s) for the Black and Decker T223 Type 1 toaster during its production lifespan.**"* See Rule 30(b)(6) Deposition Notice & Deposition Topics, Exhibit 5. Black & Decker designated David J. Sitter for that topic, and pursuant to Rule 30(b)(6), David Sitter was required to conduct the necessary research and be prepared to testify regarding alternative designs on behalf of Black & Decker.

During David Sitter's 30(b)(6) deposition, the following exchange occurred at page 64:

>   *Q.     Was Black & Decker aware of the technical ability to design a toaster that de-energizes independent of the carriage mechanism?*
>
>   >   MR. SHEA:    Objection to form.
>   >   MR. SCHNEID:  Or carriage movement, I'm sorry.
>
>   *A.     In the 1994 time frame?  No….*
>
>   *Q.     When in the industry did the technology become available, based on your understanding, for the automatic toaster to de-energize independent of the carriage movement?*
>
>   *A.     That all came into effect with the 2001 requirement.  So in the months preceding that is when all that went into place.*

See Deposition of David J. Sitter, Exhibit 6, pg. 64.

As a Rule 30(b)(6) witness with intimate knowledge of all aspects of Black & Decker's toaster technology, and who has testified over 80 times in depositions for Black & Decker, David Sitter should have disclosed Patent number 5,304,782, and the technology detailed in the Patent, in his answers under oath above. David Sitter's failure to disclose the Patent was probably perjury, but nonetheless it was highly prejudicial to the Plaintiff.

Thus, it was Black & Decker's pattern of discovery violations and its failure to disclose the obviously relevant (and damaging to B&D) Patent number 5,304,782 that caused this issue to arise

---

this case. Plaintiff casts absolutely no aspersions on trial lawyers C. Barry Montgomery, Timothy L. Mullin, Jr., or Jordan D. Shea here, unless they also knew about the Black & Decker Patent.

at this late-hour, versus anything Plaintiff or his expert did or failed to do in discovery. Had Black & Decker timely disclosed this Patent, Plaintiff's counsel would have been able to use the Patent with Daryl Ebersole and/or some other engineering expert to prove the feasibility of the alternative design in the Patent beyond all doubt. Instead, Plaintiff's expert was forced to rely on discovery responses and Black & Decker deposition testimony that was totally false and misleading.

### 2. Judicial Notice of Patent

Plaintiff requests that this Court take judicial notice of Black & Decker Patent 5,304,782 and all of the statements, drawings, specifications and technical information contained in the Patent. "Courts routinely take judicial notice of patent filing dates." *See Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp.2d 1132, 1135 (C.D. Cal. 2007); *eCash Techs., Inc. v. Guagliardo,* 210 F. Supp.2d 1138, 1146 (C.D. Cal. 2001), *aff'd* 35 Fed. Appx. 498 (9th Cir. 2002). "***Courts have also found the contents of patents to be the appropriate subject of judicial notice because patents are documents issued by the U.S. Patent and Trademark Office, a source whose accuracy cannot be reasonably questioned***." *See St. John's Univ. v. Bolton*, 757 F.Supp.2d 144, 154 (E.D.N.Y. 2010)(emphasis added); *Hay & Forage Indus. v. New Holland N. Am., Inc.*, 25 F. Supp.2d 1170, 1175 n.2 (D. Kan. 1998). In *Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment Co.*, 868 F. Supp.2d 983 (E.D. Cal. 2012) the Court took judicial notice of a patent in deciding on a motion to dismiss. This Court ought to take judicial notice of the Black & Decker patent in deciding the motion for summary judgment here.

Federal Rule of Evidence 201 "Judicial Notice of Adjudicative Facts" provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Further, the Court may take judicial notice at any stage of the proceeding

(Rule 201(d)). "In a civil case, the court must instruct the jury to accept the noticed fact as conclusive." (Rule 201(f)).

If this Court takes judicial notice of Black & Decker Patent 5,304,782, it will be a fact in evidence at trial, and Plaintiff will be able to use it in his case in chief during cross examination of Defendant's Rule 30(b)(6) witness (David Sitter) and its Rule 26(a)(2) experts (David Sitter and others). Plaintiff may also publish the Patent to the jury and use it during closing arguments. Most important though, the jury could consider the Black & Decker Patent and decide a fact question as to whether there was an alternative feasible design available and weigh the risk versus utility of the design that is set forth in the Patent.

### 3. Patent Creates Question of Fact Concerning Alternative Design

Thus, Patent number 5,304,782, in and of itself, creates a question of fact for the jury to decide concerning Black & Decker's own feasible alternative design that it sought patent protection for prior to when the T223 toaster at issue was manufactured. Based on this question of fact alone, this Court ought to deny Defendant's motion for summary and let the jury view the evidence of the Patent at trial. To prevail on a negligence claim, a products liability plaintiff must show that the manufacturer knew or should have known of the risk posed by the product design and failed to warn the plaintiff of its dangerous propensities. *Show v. Ford Motor Co.*, 697 F.Supp.2d 975, 986 (N.D. Ill. 2010). Here, the Patent clearly shows that Black & Decker knew prior to 1994 that the design of the T223 posed a risk of fire and other electrical accidents where the heating elements would remain powered indefinitely if the carriage failed to pop up or was jammed by food. The Patent shows that Black & Decker actually had, and patented-protected, the technology to remove the risk of fire prior to and during 1994. Even David J. Sitter agrees that the T223 would be a safer toaster if its design was such that it would de-energize independent of the carriage movement, and that such a design could prevent the Ostrinsky fire. *See Dep. Of David J.* Sitter, Exhibit 6 at pp. 72-73. A jury could

easily conclude that Black & Decker's failure to use its own patented design in the T223 toaster at issue was unreasonable and negligent, thus summary judgment should be denied here.

### B. Feasibility of Other Black & Decker Toaster Safety Features

Even if this Court ignores the Black & Decker Patent 5,304,782 in this case, there is still a question of fact as to whether Black & Decker's use of a thermal cutoff (CTO) in its other toasters was a feasible alternative design to the T223 design.

David Sitter, as a Rule 30(b)(6) witness, testified that the T223 was designed without any thermal cutoff. *See Deposition of David Sitter*, pg. 34. Black & Decker had incorporated the thermal cutoff in its fast-toast toasters after UL 1026 3rd edition was issued in 1998. *Id.* at pg. *35*. The Black & Decker T225 and T235 fast toast toasters had the thermal cutoff design feature. *Id.* at pg. *37*. Black & Decker never contemplated and never incorporated the thermal cutoff into toasters like the T223 at issue. *Id.* at pg. 67. The thermal cutoff part is "relatively cheap. It's a few pennies." *Id.* at pg. 68. It was possible for Black & Decker to incorporate a thermal cutoff in the T223. *Id.* at pg. 69. "Perhaps" the T223 would be a safer toaster if it had a thermal cutoff incorporated into it. *Id.* at pg. 70.

Thus, even without Daryl Ebersole's opinions about feasible alternative designs, there is still a question of fact for the jury to decide whether or not Black & Decker's thermal cutoff safety feature was a feasible alternative design that should have been incorporated into the T223 toaster at issue here. Because of that question of fact, summary judgment should be denied.

### C. Compliance with Industry Standards Not a Bar to Negligence.

The mere fact that a manufacturer adhered to all relevant industry standards does not require judgment as a matter of law. It is well settled that conformance to industry standards is relevant, but not dispositive on the issue of negligence." *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1156 (2011). What usually is done may be evidence of what ought to be done, but what ought to be done

11

is fixed by a standard of reasonable prudence, whether it usually is complied with or not." *Id.* The standard remains whether the conduct was reasonable under the circumstances. *Id.*

Thus, Defendant's argument (that summary judgment is proper because it follow industry standards) must fail and this Court should deny summary judgment here.

### D. The Risk and Utility of the Toaster Design is Addressed in Black & Decker Patent Number 5,304,782

When the risk of harm outweighs the utility of a particular design, there is a determination that the manufacturer exposed the consumer to a greater risk of danger than is acceptable to society. *Jablonski v. Ford Motor Co.*, 955 N.E.2d at 1154; *citing* Sheila L. Birnbaum, *Unmasking the Test for Design Defect: From Negligence [to Warranty] to Strict Liability to Negligence*, 33 Vand. L.Rev. 593, 610 (1980) ( "[c]onceptually and analytically, this approach bespeaks negligence").

Here, Black & Decker Patent number 5,304,782 lays out the entire risk versus utility analysis in favor of the Patented design. Black & Decker identifies the risk of fire or other electrical accident in a design where the heating elements remained powered after the toasting cycle due to a jam or other malfunction. Black & Decker identifies the utility and feasibility of the Patented design that shuts off the power to the heating elements independent of the carriage position to "thereby minimize the risks of fires or other electrical accidents." Even without Daryl Ebersole's opinions, a jury could certainly determine that the magnitude of the risk versus the utility of the design weight in favor of the safer design. Had Defendant properly disclosed the Patent, Plaintiff, through Daryl Ebersole or somebody else, could have put forth an entire analysis of the risk versus utility of the Patented design and Plaintiff's proposed design, which are the same anyway. Defendant's claim that Plaintiff has no evidence that "risk outweighs utility" is disingenuous when Defendant withheld information about its own feasible alternative design that Plaintiff would use to show that the risk outweighs utility here. Thus, summary judgment should be denied.

**II.     Plaintiff's Motion for Leave to Disclose Additional Rule 26(A)(2) Opinions Concerning Black & Decker Patent 5,304,782 and Risk Versus Utility**

If Black & Decker would have properly disclosed the Patent in discovery, Daryl Ebersole or some other engineering expert could have used the Patent as a basis for opinions on feasible alternative design. If the Patent were available during the *Daubert* motion against Daryl Ebersole, Plaintiff would have been able to show that Daryl Ebersole relied, in part, on Black & Decker's own Patent.

Plaintiff requests leave to disclose additional Rule 26(A)(2) Opinions from Daryl Ebersole, limited to Black & Decker Patent 5,304,782 and to the risk versus utility of the design contained in the Patent. After this motion for summary judgment was filed and Patent number 5,304,782 was discovered by Plaintiff's counsel, Daryl Ebersole reviewed the Patent and prepared the attached Affidavit concerning the engineering technology in the Patent. *See Affidavit of Daryl L. Ebersole, P.E., CFEI*, Exhibit 7.

Daryl Ebersole avers that Patent 5,304,782 shows that Black & Decker had the technology prior to 1994 for a feasible toaster design that would have prevented the exact toaster fire that occurred in this case. Mr. Ebersole compared the toaster design in Patent 5,304,782 as being exactly the design he proposed in his report in this case, and exactly what the UL 1026 standard required as of 2001. Finally, Mr. Ebersole averred that "If the subject toaster had included the protection circuit described in Black & Decker 5,304,782 Patent, which is similar or identical to the design I proposed in my report, the heating elements should not have continued to receive power when the toaster failed to pop up. Preventing indefinite heating of the heating elements under these conditions would have resulted in terminating the rise in temperature, prevented combustion, and the Ostrinsky fire would have been prevented." *See Affidavit of Daryl Ebersole,* Exhibit 7, para. 25. In relevant part, Mr. Ebersole also avers as follows:

Para. 7:     He has experience as a professional engineer in reviewing and interpreting

product designs, drawings, specifications and other technological information contained in Patents;

Para. 8: That he reviewed and relied upon Black & Decker Patent number 5,304,782 titled "PROTECTION CIRCUIT FOR ELECTRIC TOASTER."

Para. 10: The Black & Decker, Inc. Patent Number 5,304,782 is essentially a circuit design for a toaster that is identical to his alternative design, and to the toaster design that became the UL 1026 standard 4th Edition in 2001.

Para. 11: The Black & Decker, Inc. Patent Number 5,304,782 is evidence that as early as 1992, and certainly by 1994, Black & Decker sought U.S. Patent protection for a feasible alternative toaster design that would have prevented the fire in the Ostrinsky matter.

Para 14: The Black & Decker, Inc. Patent Number 5,304,782 describes the exact failure method that led to the toaster fire in the *Ostrinsky* matter here.

Para. 15: The Black & Decker, Inc. Patent Number 5,304,782 clearly shows that, prior to 1994, Black & Decker was aware of the problem and fire risk created by a toaster design that allowed the heating elements to remain powered after a toasting cycle if the carriage was jammed or did not pop up.

Para. 16: The Black & Decker, Inc. Patent Number 5,304,782 clearly shows that prior to 1994, the technology existed to create a feasible toaster design where the heating elements would be powered off after a toasting cycle independent of the position of the carriage, so that even if the carriage was jammed down, the heating elements would shut off and not heat the food indefinitely to the point of ignition.

Para. 17: The alternative design contained in the Black & Decker, Inc. Patent Number 5,304,782 utilizes commonly known and understood engineering principles and component parts that were commonly available prior to 1994.

Because of Defendant's non-disclosure of this critical Patent, Plaintiff should be granted leave to formally disclose additional Rule 26(a)(2) opinions from Daryl Ebersole regarding the Black & Decker Patent and the technology contained therein. These opinions would clearly be helpful to the jury in understanding the engineering issues in the Patent as they answer a question of fact regarding whether the Patent is evidence of a feasible alternative design that Black & Decker chose to not incorporate in the T223 toaster at issue. Plaintiff should also be allowed to supplement Ebersole's Rule 26(a)(2) opinions with an assessment of the risk versus utility of the alternative design shown in the Black & Decker Patent.

### III. Motion to Reconsider *Daubert* Ruling Limited to Patent 5,304,782

In light of the Black & Decker Patent number 5,304,782, Plaintiff requests that this Court reconsider its November 16, 2016 *Daubert* ruling where it barred Daryl L. Ebersole from testifying about a feasible alternative design in this case. If Defendant properly disclosed the Patent before the *Daubert* motion, Mr. Ebersole would have relied on the Patent and this Court would not have barred him from testifying about the feasible alternative design shown in the Patent.

### CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an order denying Defendant, BLACK & DECKER (U.S.) INC.'S Motion for Summary Judgment, reconsidering and vacating the November 16, 2016 Memorandum and Opinion barring alternative feasible design opinions from Daryl L. Ebersole, granting Plaintiff leave to disclose supplemental opinions of Daryl L. Ebersole concerning Black & Decker Patent Number 5,304,782, imposing discovery sanctions against BLACK & DECKER (U.S.) INC. for its failure to disclose Patent number 5,304,782 in discovery, allowing Plaintiff to conduct additional limited discovery on Defendant as it relates to Patent 5,304,782, grant Plaintiff oral argument on the issues raised herein, and for any other relief this Court deems just.

Respectfully submitted,

LAW OFFICES OF MATHYS & SCHNEID
Attorneys for the Plaintiff

By: /s/ Mark T. Schneid

Mark T. Schneid
LAW OFFICES OF MATHYS & SCHNEID
1730 Park Street, Suite 209
Naperville, Illinois 60563
Telephone: (630) 428-4040
Facsimile: (630) 428-0044
Email: mts@mathyslaw.com